IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jalal Beyah, #302713, | ) | |
| | ) | Civil Action No. 5:12-263-TLW-KDW |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Jalal Beyah ("Petitioner" or "Beyah"), a state prisoner, filed this pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court

pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report

and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos.

18, 19. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised

Petitioner of the summary judgment procedures and the possible consequences if he failed to

respond adequately to Respondent's motion. ECF No. 20. Petitioner filed a response in

opposition to Respondent's motion on June 5, 2012. ECF No. 25. Having carefully considered

the parties' submissions and the record in this case, the undersigned recommends that

Respondent's Motion for Summary Judgment, ECF No. 18, be granted.

   I.    Factual Background

On September 14, 2000, Petitioner approached a vehicle driven by Reed Messer; Marissa

Raymond was a passenger in the vehicle. App. 464-65.[1] After a brief conversation between

Petitioner and Messer, Petitioner got into the driver's seat of Messer's vehicle and drove to a

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF Nos. 19-1 through 19-12 in this habeas matter. Page number references are to the pages as numbered in the Appendix.

nearby ATM where Messer withdrew $200 from her account and gave it to Petitioner. App. 465-74. Petitioner and Messer walked back to the vehicle and Petitioner returned to the driver's seat and drove an undetermined distance before exiting the vehicle.  App. 474-77. Petitioner contends that he was a drug dealer and that he knew Messer from prior drug deals and Messer gave him the $200 as payment for drugs she had received but not paid for.  App. 197-202.  Messer testified that she did not know Petitioner and that he forced himself into her vehicle by knifepoint and threated to harm her and Raymond if she did not give him money.  App. 466-68.  Petitioner was arrested a few days later and indicted by the Charleston County Grand Jury during the April 2001 term of court for two counts of kidnapping, armed robbery, attempted armed robbery, carjacking, and possession of a knife during the commission or attempt to commit a violent crime. App. 9; 165-68.

On June 7-10, 2004, a jury trial was conducted before the Honorable Diane S. Goodstein in Charleston, South Carolina.  App. 1-567.  Attorneys Boyd Young and Martha Kent Jenkins represented Petitioner, and Deputy Solicitor Scarlett Wilson and Assistant Solicitor Paul Thurmond represented the State.  App. 1.  Petitioner was convicted on both kidnapping charges, and of two counts of attempted robbery.  App. 322-323.  Petitioner was acquitted of the carjacking and possession of a knife during the commission or attempt to commit a violent crime charges.  App. 323.  Petitioner was sentenced to thirty years on each kidnapping conviction and five years on each attempted robbery conviction, the kidnapping sentences were to run concurrent to the attempted robbery convictions.  App. 339-40.

II.    Procedural History

Trial counsel timely filed and served the notice of appeal and Petitioner, represented by Joseph L. Savitz, III, Esq., of the South Carolina Office of Appellate Defense, filed an *Anders*[2] brief arguing that "the judge erred by holding that the State had not violated *Batson v. Kentucky* when it struck three potential black jurors from the jury which convicted Beyah." ECF No. 19-6. Petitioner did not submit a pro se brief.  On March 15, 2006, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted appellate counsel's petition to be relieved. ECF No. 19-5 at 128-29.   The remittitur was issued on March 31, 2006.   ECF No. 19-8. Petitioner did not seek discretionary review to the South Carolina Supreme Court.

On August 28, 2006, Petitioner filed an application seeking post-conviction relief ("PCR").   App. 568-75.   In his application, Petitioner argues he was entitled to relief on the following grounds:

Issue A:  Subject Matter Jurisdiction

Issue B: Due Process Violation

Issue C:  Ineffective Assistance of Counsel.

App. 571.    The State filed its return on June 6, 2007, requesting an evidentiary hearing on Plaintiff's ineffective assistance of counsel claim.   App. 582.   On November 15, 2007, an unsigned amended PCR application was filed by Petitioner's counsel arguing Petitioner was entitled to post-conviction relief on the following grounds quoted verbatim:

Argument I:  Ineffective Assistance of Counsel

    A)  Trial Counsel failed to obtain necessary documents and records in preparation of trial.   (Counsel did not obtain medical records, cell phone records, and police reports) (Mr. Young properly preserved the issued, pages 223-224)

    B)  Trial Counsel failed to object to opinions and conclusions of law presented by witnesses.

---

[2] *See Anders v. California*, 386 U.S. 738 (1967).

     a.   Russell Chapin testimony, pg. 377, lines 14-15, pg. 381, lines 25 and pg. 382, lines 2-3
     b.   Reed Messer testimony, pg. 482, line 25
     c.   Jason O'Dell, pg. 392, line 1

   C)   Trial Counsel was ineffective for failing to object and properly preserve issue (See stabbing issue below)

Argument II: Improper character evidence which was highly inflammatory, confusing, and prejudicial to Petitioner. (On Cross, the Solicitor's questioned Mr. Beyah about stabbing the person that shot Mr. Beyah) pg. 208, line 2 and 6; pg. 210, line 1.

App. 576-77. On March 10, 2008, an evidentiary hearing was conducted before the Honorable R. Markley Dennis in Charleston, South Carolina. App. 583. Petitioner was represented by Charles T. Brooks, III, Esq., while the State was represented by Matthew J. Friedman, Esq. of the Office of the Attorney General. *Id.* Petitioner testified at the hearing and Petitioner's former defense attorney, S. Boyd Young, was deposed this same day via telephone. App. 583-99. On June 9, 2008, the PCR court issued an order denying Petitioner relief and making the following findings of fact and conclusions of law:

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

**Ineffective Assistance of Counsel**

The Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment. <u>Strickland</u>, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. <u>Cherry</u>, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." <u>Id.</u> at 625 (citing <u>Strickland</u>, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. <u>Johnson v. State</u>, 325 S.C. 182,480 S.E.2d 733 (1997).

The Applicant testified that his first trial resulted in a hung jury. He testified that he was acquitted of carjacking and possession of a knife during the commission of a violent crime but was convicted of two counts of kidnapping, strong arm robbery, and attempted strong arm robbery at the second trial. Applicant alleged that he knew the victim and that she owed him money from prior drug transactions. Applicant testified that police thought they were chasing Applicant on the night of the incident, but they were actually chasing a person named "Bug Eye." Applicant told counsel about "Bug Eye," but he did not check into it. Applicant asserts that he took a cab home on the night of the incident. He contends he gave counsel the cab driver's information, but counsel failed to contact him.

Applicant also alleges that counsel failed to object to the weapon being introduced into evidence. Applicant testified that counsel did not investigate whether victim had more than $200 in her bank account or whether the other victim had any money taken. According to Applicant, counsel also did not interview witnesses to look into whether there had been previous drug transactions between Applicant and victim. Furthermore, Applicant alleges that counsel told Applicant that his investigator was sick and unavailable during both trials. Applicant also testified that counsel told him there was a plea bargain for seven (7) years. Applicant testified that between the two trials, Applicant asked counsel to get him out on bond but counsel told him it was against his ethical code. Finally, Applicant testified that counsel came up with a new theory for the case on the weekend before the second trial, but the theory was not true and Applicant wanted to stick with the theory of a drug sale to the victim.

Trial counsel testified that his investigator was Lee Ginn from the Charleston County Public Defender's Office. Trial counsel did not recall telling Applicant that Mr. Ginn was sick or unavailable during the trials. He testified that his investigators generally do not appear at trials with him, but if he needed an investigator at trial and Mr. Ginn was not available, other investigators would have been present. Counsel testified that he objected to the display of the knife in

front of the jury. He asserts that the actual knife was suppressed and the knife that was displayed to the jury was merely a demonstrative aid. Counsel also testified that the Applicant told him it was someone else who the police were chasing, but Applicant did not tell counsel that person's name or contact information. He contends that Applicant never mentioned a person by the name of "Bug Eye." Counsel testified that Applicant told him the cab driver was a man in his 50s who drove a blue Lincoln and hung out near the Piggly Wiggly on Meeting Street. Counsel contends that the cab was unregistered so there was no company to call, and counsel's investigator went to the Piggly Wiggly but did not find the cab driver.

Counsel testified that he could not search cell phone records because Applicant did not know his prior cell phone number or what provider he used. Moreover, counsel did not get involved with the case until over as [sic] year after the incident date so the phone records would have been difficult to obtain even if Applicant knew his phone information. Counsel testified that he tried to get Applicant out of [sic] bond, but bond was denied because Applicant had fled to North Carolina during his first trial. Counsel testified that he entered plea negotiations on behalf of the Applicant. According to his testimony, the State offered fifteen (15) years before the first trial and seven (7) years before the second trial. Counsel asserts that it was Applicant's decision to reject both of the offers.

Counsel testified that Applicant did not give him any leads on witnesses who could corroborate Applicant's assertion that he and the victim had engaged in prior drug transactions. Counsel contends that he spoke with the three medical students who called the police and none of them had met the victim prior to this incident; thus, none of them could confirm whether or not Applicant and victim had previously known each other. Counsel testified that he did not search victim's bank records because it was not relevant, and if victim had more than $200 in her account it would have impeached Applicant's testimony that she could not pay him back for the entire drug debt. Counsel denied that he ever wanted to go forward on any theory other than the drug sale theory.

This Court finds that Applicant's testimony was not credible, while also finding that Counsel's testimony was credible. This Court finds that Applicant has failed to demonstrate that he provided counsel with any leads on witnesses who could corroborate that he knew the victim prior to the incident or any contact information on a person named "Bug Eye." Counsel adequately investigated the lead that Applicant provided about the unregistered cab driver, but he could not find the driver. Counsel asserts that he never told Applicant that his investigator was sick or unavailable for trial, but counsel also noted that his investigators generally do not appear at trial. This Court finds that counsel articulated a reasonable trial strategy for not searching victim's bank records, specifically that it would have impeached Applicant's testimony if victim had more than $200 in

her account. See Caprood v. State, 338 S.C. at 103, 525 S.E.2d at 514. Counsel attempted to get Applicant out on bond during the second trial, but Applicant was denied bond due to the fact that he fled to North Carolina during jury deliberations in his first trial. Finally, this Court finds that counsel properly objected to the State displaying the knife in front of the jury, and the trial judge allowed a knife to be used merely as a demonstrative aid at trial.

This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, trial strategy, Applicant's version of the facts, and possible defenses or lack thereof.

This Court finds that trial counsel entered plea negotiations on behalf of the Applicant. The State offered fifteen (15) years before the first trial and seven (7) years before the second trial. Applicant chose to reject both offers.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that Applicant's trial attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in his representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. Therefore, this Court need not address prejudice. Applicant's complaints concerning counsel are without merit and are denied and dismissed.

## **All Other Allegations**

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, specifically lack of subject matter jurisdiction and due process violations, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## **CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice. This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 227 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely served and filed.

App. 628-34.

Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend.   On March 26, 2010, Petitioner, represented by Elizabeth A. Franklin-Best, Esquire, of South Carolina Commission on Indigent Defense, filed a petition for writ of certiorari.  The petition argued that "trial counsel render[ed] ineffective assistance of counsel when he failed to investigate the bank account of the purported victim, when evidence from the account could have corroborated prisoner's defense at trial."  ECF No. 19-9 at 3.  The State filed its return to the petition for writ of certiorari on July 6, 2010 arguing that the evidence supported the PCR court's finding that trial counsel was not ineffective.  ECF No. 19-10.  On August 4, 2011, the South Carolina Court of Appeals denied the petition for writ of certiorari. ECF No. 19-11.  The remittitur was issued on August 23, 2011. ECF No. 19-12.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

GROUND ONE:  The issue that was heard in the S.C. Supreme Court Cert.

Supporting facts:  this will be written in memorandum of law that will follow. Also, the [illegible] placed forth by the Appellate Defense office that was filed in the supreme court.

GROUND TWO:  See PCR Brief Attached on Page 1 through 7.

GROUND THREE:  See PCR Brief Attached same answers given in issue two apply to three.

Supporting facts: See pages 8 through 12.

GROUND FOUR:  See PCR petition attached on pages 12 through 15.

ECF No. 1 at 5-10.

[Ground Five] GROUND ONE:  Same as Pg. 5.[3]

Supporting facts:  This is seen in the brief placed forth by the attorney in the PCR proceedings.

[Ground Six] GROUND TWO:  See attached 127 pg brief dated October 31, 2006, pgs 1-7.

Supporting facts:  facts contained in pgs. 1-7.

[Ground Seven] GROUND THREE:  See attached 127 pg brief dated October 31, 2006 pgs. 8-12.

Supporting facts:  See pgs 8-12.

[Ground Eight] GROUND FOUR:  Did trial counsel render ineffective assistance of counsel when he failed to investigate the bank account of the purported victim when evidence from that account could have corroborated petitioner defense at trial.

Supporting facts:  See attached pgs 4-6 in writ of cert brief.

Note:  I want to make certain that the court is aware that I seek to have heard the issues in the brief attached on pgs 12-127.

ECF No. 1-2 at 5-14.

Respondent interpreted the issues in the Petition to be as follows:

---

[3] Petitioner filed a second or supplemental Petition listing additional grounds that have been relabeled in this Report for consistency.

Ground One: Trial counsel rendered ineffective assistance of counsel when he failed to investigate the bank account of the purported victim, when evidence from that account could have corroborated petitioner's defense at trial.

Grounds Two, Three, and Four:

   a) Deficient indictment, lack of subject matter jurisdiction, violation of state law;
   b) Ineffective assistance of counsel for failing to protect "due process" rights in regard to defective indictment and lack of subject matter jurisdiction;
   c) Ineffective assistance of counsel for failing to move for directed verdict of acquittal based on variance of evidence from allegations of the indictment;
   d) Trial court failed to grant directed verdict of acquittal based on variance of evidence from allegations of the indictment.

ECF No. 19 at 5-6.

   B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      C.   Habeas Corpus Standard of Review

          1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 399 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court factual

determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South

Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

       3.       Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external

factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice.  *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.     Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

D.  Analysis

1.  Procedurally Barred Grounds

Respondent contends that Ground One is the sole ground that Petitioner has available for habeas review arguing that Petitioner's remaining grounds were procedurally defaulted.  ECF No. 19 at 10. In response, Petitioner contends that he submitted a memorandum of law[4] in support of his PCR application that addresses the grounds argued in his habeas petition, however Petitioner avers that he did not receive a clock-stamped copy and that his memorandum was not made part of the record that was before the PCR court.  ECF No. 25 at 3.  Petitioner argues that during his testimony before the PCR court that he requested that his "memorandum be acknowledged and that each issue (ground) raised therein be addressed by the PCR judge and ruled upon in his final order."  *Id.* at 8.  Petitioner argues that his memorandum of law was not

---

[4] Petitioner has attached a memorandum of law that was purportedly filed in support of his PCR application to his habeas petition at ECF Nos. 1-3 at 5 to 7; 1-4.

"taken into consideration with the PCR Court's ruling thus 'critically jeopardizing' his entire appeal process." *Id.* at 7.

The undersigned has reviewed Petitioner's PCR application and there is no record of Petitioner having submitted a memorandum of law in support of his PCR application. Further, the PCR court's Order of Dismissal reveals that none of the issues argued in the memorandum of law were raised before and/or ruled on by the PCR court. Therefore, these issues are procedurally barred from federal habeas review. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred).    Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising grounds two through eight in his federal habeas petition.

The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). The court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion that follows is dicta. *See Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the claims raised in Grounds Two through Eight as these claims are procedurally barred.

2.   Petitioner Has Not Overcome the Procedural Bar

In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

The existence of cause ordinarily turns upon a showing of a factor external to the defense which impeded counsel or Petitioner's compliance with the state procedural rule. *Murray*, 477 U.S. at 488. Having reviewed the record evidence and the parties' legal memoranda, including the memorandum of law that was purportedly filed in support of Petitioner's PCR application, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims. Petitioner had a jury trial where he offered a defense to the charges, including presenting his own testimony before the court. Additionally, Petitioner filed a direct appeal, and had a PCR hearing where he again testified before the PCR judge. Petitioner also filed an appeal of the PCR decision. Petitioner had numerous opportunities to raise the issues that he is now trying to bring before this court, however, he failed to raise them, raise them properly, or preserve these issues for habeas review. Petitioner has consistently abandoned opportunities to raise these issues and therefore cannot establish cause and prejudice. These issues are therefore procedurally barred from consideration by this court and should be dismissed.

Petitioner has also failed to demonstrate that he is actually innocent of the crimes for which he was convicted, such "that failure to consider the claims will result in a fundamental miscarriage of justice." *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750)); *see also Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir. 1999). The claim of actual innocence must be supported "with new reliable evidence," and "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Petitioner has not offered

any new evidence to suggest that he is actually innocent and therefore the undersigned recommends that the Respondent's motion for summary judgment be granted as to Grounds Two through Eight of Petitioner's habeas petition.

    3.  Merits

In support of Ground One in his habeas petition, Petitioner argues that his trial counsel was ineffective when he failed to investigate the bank account of the purported victim.  ECF No. 1-3 at 2.  Petitioner contends that the alleged victim's bank account information "may have revealed information that corroborated" his trial defense and showed that Petitioner did not rob the victim, but instead that she was paying him money owed from a drug sale.  *Id.* at 3. Respondent contends that the PCR judge was correct in determining that Petitioner's trial counsel was not deficient.  ECF No. 19 at 13-14.  Respondent argues that Petitioner did not offer any evidence to the PCR judge as to what his trial counsel would have found if the victim's bank account had been investigated. *Id.* at 13.  Respondent further contends that the victim's bank account information was not relevant to Petitioner's case, but if it was relevant, this information would only serve to weaken Petitioner's defense.  *Id.*  Further, Respondent avers that "no less than three eyewitnesses testified that it did not appear that the victims knew the Petitioner, and the victims were taken by force." *Id.*

The undersigned finds that the PCR court reasonably applied *Strickland* in finding that trial counsel was not ineffective.  There is a strong presumption that trial counsel's conduct is within the wide range of reasonable professional assistance, and the court is required to grant broad deference when scrutinizing an attorney's performance. *Strickland*, 466 U.S at 688-89. Trial counsel testified that he did not believe that the victim's bank records were relevant, explaining that:

If she had had significantly more money than $200, it would have impeached Jalal's testimony that she was not able to pay him everything that he was owed, which is the reason he was upset and threw the cell phone out of the car. So, his testimony was that she was not able to pay him all of the money which he was due. If we had records showing she had significantly more than $200 in her account --

Q. Okay.

A. -- it would have made him less credible as far as not being -- not gotten the money due him --

Q. Okay.

A. -- in my opinion.

App. 616-18.

Having reviewed the record, and in light of the PCR court's credibility findings, the undersigned is of the opinion that Petitioner's allegations of ineffective assistance of counsel are invalid. It was not unreasonable for the PCR court to find that Petitioner failed to meet his burden of showing that his trial counsel was ineffective for failing to investigate what funds were in the victim's bank account. The PCR court's decision was not contrary to, nor an unreasonable application of, clearly established federal law under §2254(d)(1). This ground is without merit and the undersigned recommends that it be dismissed.

IV.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas corpus relief and recommends that each be dismissed. Accordingly, for the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 18, be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

December 19, 2012                                Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**